ESTATE OF BLONDET ET AL. *v.* FANTAUZZI HERMANOS
IN LIQUIDATION.

## APPEAL from the District Court of Guayama.

No. 171.—Decided April 11, 1908.

JUDGMENT—OPINION.—Where, as in the present case, an opinion is rendered, it is the better practice to render the opinion and judgment separately, the latter based upon and in accordance with the former, and entered in accordance with the provisions of section 227 of the Code of Civil Procedure, and it is from this judgment that the appeal should be taken.

STATEMENT OF FACTS—AUTHENTICATION THEREOF.—In order that this court may consider the evidence it is necessary that the statement of facts be approved by the trial judge and that his signature be affixed thereto in legal form.

ACTION FOR RECOVERY OF PROPERTY—TITLE OF INHERITANCE.—A title of inheritance in itself is not sufficient upon which to recover the ownership of an irrigation system and of a tract of land from a defendant who shows a title to the same property recorded in his favor in the registry of property.

ID.—UNIVERSAL TITLE—INHERITANCE.—A universal title, which is a title of inheritance, is ineffectual and insufficient in itself upon which to recover property, unless it is proved that such property forms a part of the inheritance, because the heir cannot acquire property or rights other than those devised by his predecessor upon his death.

ID.—ANNULLMENT OF DEFENDANT'S TITLE.—Where a plaintiff and defendant derive their titles from the same source, and the right to recover is based upon the nullity of the conveyance under the title of the defendant, it is necessary first to secure the annullment thereof, since it is only by such annullment that plaintiff's title may recover its strength, as both titles cannot exist and prevail simultaneously.

The facts are stated in the opinion.
*Mr. López Landrón* for appellant.
*Mr. Vias Ochoteco* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The facts in this case are stated in the opinion and judgment of the District Court of Guayama and, although it is a lengthy opinion, we think it advisable to quote it in full. It reads as follows:

"I. By deed executed July 2, 1873, the agricultural partnership known as Blondet & Alvarez, composed of Messrs. Ciprian Blondet and Guillermo Alverez, acknowledged that it

owed the firm of G. Alvarez & Co. the sum of $5,757.09 and interest thereon at 1 per cent per month; and to secure the payment thereof, constituted a mortgage upon the sugar estate known as 'Adela,' situated in Patillas in the *barrios* of Jagual and Maton, composed of 205 *cuerdas* of land with the buildings, machinery and other appurtenances. This mortgage was assigned on June 5, 1874, to Mrs. Mariana Josefa Vázquez de Texidor, who, in turn, assigned the same to Hipolito Gautier by deed of June 13, 1879.

"On the other hand, according to deed executed June 8, 1874, the commercial firm of Blondet & Alvarez had been dissolved, Ciprian Blondet becoming the sole and absolute owner of the 'Adela' plantation and the only person responsible for the debts of the agricultural partnership.

"II. On September 15, 1873, the Superior Civil Government of the Island of Porto Rico passed a resolution, the pertinent portion whereof reads as follows:

" 'In accordance with advices received from the Board of Agriculture, Industry and Commerce, of the 7th ult., and the advice of the General Inspector of Public Works, the firm of Blondet & Alvarez is hereby authorized to take 32 litres of water per second from the Real River for the irrigation of 41 hectareas, 55 areas, and 61 centiareas of the "Adela" plantation, situated within the jurisdiction of Patillas, it being understood that, out of this amount of water, they are authorized to use such as may be necessary to supply the machinery in the factory, subject to the conditions hereinafter set forth, etc.'

"III. Hipolito Gautier, in his capacity as creditor and assignee, brought an action in the Court of First Instance of Guayama, for the foreclosure of his mortgage and the recovery of the mortgage debt against the estate of Ciprian Blondet as the owner of the mortgaged property; the regular proceedings therein having been had, a writ of execution was issued on June 2, 1880, directing the sale of the properties attached, at public auction, and no bidders having appeared

at said sale, the 'Adela' plantation was awarded to the execution creditor, and was found to contain approximately 286½ *cuerdas* of land.''

The award aforesaid which appears in a public deed of January 9, 1883, introduced by both parties as evidence, and of which mention will be hereinafter made, reads as follows:

'' 'Guayama, September 13, 1880. In accordance with the proposal of the assessor, the plantation 'Adela' and other properties constituting the same is awarded to Hipolito Gautier in payment of his credit as of the property of the estate of Ciprian Blondet for two-thirds of its assessed valuation; the execution creditor, Gautier, is ordered to be placed in possession of the said property and the municipal judge of Patillas and present actuary is hereby duly commissioned and directed to carry out this order, and the persons composing the said estate are required to deliver the titles of ownership and execute a proper deed to the successful bidder, and in case they should fail so to do, it is ordered that such delivery be made by the proper official to Hipolito Gautier. It is so ordered by the acting judge to which I certify. José Gual. Felix Lino Rivera.'

''IV. The execution debtor estate, being without any recorded title, procedings were instituted in their name to secure a possessory title which was approved by order of the municipal judge of Patillas on May —, 1881, in virtue of which the possession of said 'Adela' plantation, consisting of 286½ *cuerdas* situated in *barrios* Jagual and Maton within the municipal jurisdiction of Patillas, and divided into two tracts, one of 127 *cuerdas* and the other of 159½ *cuerdas,* was recorded in the name of the estate of Cipriano Blondet. It so appears from the copy of the record introduced as evidence by the plaintiff.

''V. The execution creditor, Gautier, recorded in his name the 286½ *cuerdas* of land forming the 'Adela' plantation, by virtue of the transfer thereof to him under the deed of award of September 13, 1880, which was recorded in the Registry of Property of Guayama under date of April 13, 1882, folio 53, Vol. 20 of Patillas, estate No. 56 fourth record, as appears

from the certificate issued on September 2, 1882, and intro-
duced in evidence by the defendants; it also appearing from
the said record that the order of sale and award were con-
sented to by the execution debtor estate.

"VI. Ciprian Blondet (it should be Hipolito Gautier),
being the owner of the 'Adela' plantation, which he acquired
by virtue of the judicial sale hereinbefore referred to, and
by virtue of the deed executed in Arroyo before Notary
Sebastián Muñoz Rivera, under date of January 9, 1883, he
sold to the commercial firm of Fantauzzi Hermanos a tract
of 110½ *cuerdas* of the land in the *barrio* of Jagual, within
the jurisdiction of Patillas, which formed a part of the 127
*cuerdas* which was in turn a part of the larger portion of the
plantation bounded on the north by the lands of Francisco
Monserrate López and the Real River; on the south by the
lands of Fantauzzi Hermanos; and on the west by those be-
longing to Soledad Morales and José G. Salinas. Thereafter,
in the same deed appears the following clause:

" 'It is hereby made to appear that this land, the extent of which
will be hereinafter given, has the use of waters for irrigation—that
is to say, is authorized to take from the Real River 32 liters of water
per second to irrigate 41 hectares, 55 ares, and 61 centiares of the
said land, which privilege was granted to the original owners of the
said property, Ciprian Blondet and Guillermo Alvarez, by resolution
of the General Government of this Island under date of September
15, 1873, of which a copy certified to by the *alcalde* of Patillas is pre-
sented; so that the land included in the 41 hectares, 55 ares and 61
centiares, to be irrigated, is a part of the greater tract now sold by
Gautier under this deed to the firm of Fantauzzi Hermanos.'

"The clauses and stipulations of the said deed read as
follows:

" 'First. Hipolito Gautier y Mosquet sells absolutely and conveys
in perpetuity to the commercial firm of Fantauzzi Hermanos 110½
*cuerdas* of land, more or less, the boundaries of which have been de-
fined, including the works pertaining to the said irrigation scheme,
with everything else thereon situated, without any reservation what-

soever, for the stipulated price of 2,000 *pesos,* current money, of which he acknowledges that he has received 1,000 *pesos* heretofore from the purchaser.

" 'Second. The vendor likewise assigns and transfers to the firm of Fantauzzi Hermanos the irrigation concession, granted for the use of the land sold, as granted to the "Adela" plantation by a resolution of the Superior Government of this Island under date of September 15, 1873, for the use of the waters of the Real River, under the limitations and other obligations specified in the said concession; this assignment including all the masonry buildings and other works pertaining to the said irrigation plant, the price of which is included in the 2,000 *pesos* for which this sale is made.'

"VII. After the acceptance by the purchasers, Messrs. Fantauzzi Hermanos, of the conveyance made in the manner set forth by Hipolito Gautier, the members of the Estate of Ciprian Blondet appeared at the execution of the said deed and set forth the following:

" 'And they add that, for the purpose of ratifying this deed and of executing the deed which was required by judicial order entered in the said proceedings, there have appeared at this time, as successors of the former owner of the "Adela" plantation, Ciprian Blondet, his widow, Victoriana Morales y Masquet, engaged in household occupations, of age, and a resident of Guayama, in her own right, and as the executrix and curatrix *ad bona* ·of her minor children, Rosa Juana, Juan Alfredo, Carmen, Elvira, Ana, Federico and María Emma Blondet y Morales, under the appointment made by the former Judge of First Instance of Guayama, José Gamarra, before Notary Pedro Jiménez Sicardó, under date of December 10, 1879, which appears in the record of said foreclosure proceedings, and to which office she was designated in the will executed by her deceased husband, Ciprian Blondet, before Notary José Mariano Capó, under date of May 8, 1879, wherein he constitutes as his sole and universal heirs his legitimate children, which are the seven above named, and the other two, who are: Adelaida Blondet y Morales, engaged in household occupations, of age, accompanied by her husband, Guillermo Alvarez y Sánchez, of age, a resident of Guayama and solicitor before the Guayama court; and Enriqueta Blondet y Morales, of similar occupation, of age, accompanied by her husband, José Juan Vidal, a property owner, of age, and a resident of this city. Both husbands

aforesaid granted to their wives, respectively, permission to execute this deed, in accordance with the law, to which I certify.'

"These new parties thereupon stated various facts relating to the documents concerning the 'Adela' plantation, and referring to the proceedings had in the foreclosure suit, and the compulsory proceedings prosecuted by the creditor, Hipolito Gautier, against the said plantation, and at the end of clause eight the following statement is made:

" 'That the whole tract of land was assessed at 7,579 *pesos;* that the irrigation canal is separately assessed as follows: The masonry canal for irrigation purposes, in bad condition, assessed at 400 *pesos.*' "

Following are set forth the clauses contained in the deed the pertinent portion of which reads as follows:

" 'Therefore, in accordance with the provisions of the order of September 13, 1880, and furthermore, desiring to ratify the foregoing deed executed by Hipolito Gautier in favor of the firm of Fantauzzi Hermanos, they execute this deed under the following clauses: First. Victoriana Morales y Masquet, in her own right, and as the executrix and curatrix *ad bona* of her minor children above mentioned, Adelaide Blondet y Morales in her own right, Enriqueta Blondet y Morales in her own right, being the only persons composing the Estate of Ciprian Blondet, and in compliance with the orders of the Court of First Instance of Guayama, contained in the decree hereinbefore mentioned and quoted, sell and convey absolutely and in perpetuity to the execution creditor, Hipolito Gautier y Masquet for himself, his legal heirs, successors and assigns, the "Adela" plantation hereinbefore described, with its lands, the area of which has been stated, the buildings, machinery, houses and all other things constituting the same and mentioned in the attachment and assignment, including the canal and irrigation works, and the rights of action pertaining to that concession, without any reservation whatever, hereby making formal assignment thereof for the sum of 7,202.32 *pesos,* commercial money, which is equivalent to two-thirds of the assessed valuation thereof.

" 'The estate of Ciprian Blondet solemnly ratifies the sale made by Hipolito Gautier to the firm of Fantauzzi Hermanos by this deed, of 119 *cuerdas* of land which form a part of the "Adela" plantation, with the assignment in favor of the said firm of all his rights and

actions in the irrigation concession appertaining to the land sold as granted to the "Adela" plantation by resolution of the Superior Government of this Island, under date of September 15, 1873, for the use of the waters of the Real River, including the masonry and other works appertaining to the said irrigation system.'

"VIII. The purchasers, Messrs. Fantauzzi Hermanos, presented at the registry of property in Guayama a certified copy of the said deed of January 9, 1883, and it is recorded at folio 227, Vol. 2 of the Ayuntamiento of Patillas, property No. 88, 1st record, and in that record it is made to appear that the buildings appertaining to the canal and irrigation system mentioned are included.

"IX. The heirs of Ciprian Blondet and Guillermo Alvarez presented in the registry of property, on the 22d day of October, for record, an application accompanied by the certificates wherein appears the irrigation grant made in favor of the firm of Blondet & Alvarez in 1873, and the admission thereof to record was denied and the denial of the registrar appears in the following terms:

" 'Wherefore, at the present time, there being no such plantation as the "Adela" plantation in the municipality of Patillas, because the one formerly there existing and known by that name was divided into different tracts and sold, it appearing in the record of the deed to one formerly there existing and known by that name was divided into different tracts and sold, it appearing in the record of the deed to one of them sold to Fantauzzi Hermanos, that the sale of that tract by Hipolito Gautier, who had acquired the Adela plantation at public sale, from the Estate of Ciprian Blondet, was included the buildings and works appertaining to the irrigation canal for the taking of 32 liters of water per second from the Real River, the record of said instrument is denied and a cautionary notice is entered to be effective for 120 days, in accordance with the law governing appeals from the decisions of registrars of property.

" 'It so appears from the certificates issued by the Registrar of Property of Guayama which is included in the record as documentary evidence introduced by the defendants.'

"X. Now come and appear before this court as plaintiffs Guillermo Alvarez y Sánchez, of age, a resident of this city, and the Estate of Ciprian Blondet, composed of Adelaida Blondet Morales, accompanied by her lawful husband, Guillermo Alvarez; and Enriqueta Blondet Morales, now her estate, composed of her widower, José Juan Vidal, and her minor children, Jacinto, Domingo, Angela, Josefina, Felipe and Narciso, and her other children of age, Teresa Vidal, accompanied by her husband, José Pacheco, Rosa Teresa, known also as Rosa Juana Blondet Morales, of age, and accompanied by her lawful husband, Hipolito Gautier; Juan Alfredo Blondet Morales, Carmen Blondet Morales, accompanied by her lawful husband, José Juan Vidal, Ana Blondet Morales, María Emma Blondet Morales, accompanied by her lawful husband, Jacinto López, all of the latter being of age and appearing in their own behalf, and representing the rights of the deceased Elvira and Federico Blondet Morales, and through their counsel pray the court:

" 'To render final judgment sustaining this action for recovery of property and adjudging the commercial firm of Fantauzzi Hermanos in liquidation in its own behalf and the liquidators or successors thereof, C. & J. Fantauzzi, to return the irrigation plant and works, and restore to the plaintiffs the possession and enjoyment and free disposition of the official concession thereof, as also of the 110½ *cuerdas* approximately, segregated from the "Adela" plantation with all the products and profits of each, produced and to be produced, with the costs and without prejudice to the actions which defendants may have against Hipolito Gautier y Masquet.

" 'As the grounds for their complaint plaintiffs allege: (*a*) That the irrigation concession obtained by Blondet & Alvarez was not expressly mortgaged to G. Alvarez & Co., and that it was not subject either to the attachment or foreclosure, nor was it given in special payment in the sale and award of the property, nor transferred to the execution creditor, Hipolito Gautier, and, therefore, that he could not convey said irrigation concession and works to the defendants, Fantauzzi Hermanos; (*b*) that the said irrigation concession belonged partly to Guillermo Alvarez and to Ciprian Blondet, and not to the firm of Blondet & Alvarez, and that, in the deed of January 9,.

1883, neither Guillermo Alvarez, the coowner of the irrigation plant, nor the Estate of Ciprian Blondet in its own behalf, appeared to execute a deed of sale to the said irrigation plant, outside of the full and complete liquidation; that the firm of Blondet & Alvarez has never sold nor duly ratified, in accordance with the law, either the water concession or the 110½ *cuerdas* described as segregated from the "Adela" plantation; (*d*) that, on January 9, 1883, when the deed was executed in favor of Fantauzzi, Rosa Teresa, known as Rosa Juana Blondet Morales, one of those composing the Estate of Ciprian Blondet, was of legal age and, notwithstanding this fact, in said deed she was made to appear as a minor and represented by her mother, the widow of Ciprian Blondet.

" 'In support of these allegations the plaintiffs introduced at the trial the following documentary evidence: (*a*) A certified copy of the deed of January 9, 1883, executed before Notary Sebastian Muñoz Rivera of Arroyo; (*b*) a certificate of baptism of Rosa Teresa Blondet Alvarez showing that she was born on the —— day of February, 1857; (*c*) a simple copy of a letter addressed by Juan A. Blondet to Antonio Fantauzzi of Arroyo, on March 6, 1906, wherein he invited him to enter into an equitable adjustment of the matter of the conveyance of the "Adela" plantation and its irrigation plant, in possession of Fantauzzi Hermanos, with a view to avoiding litigation; (*d*) original letter of Antonio Fantauzzi addressed to Juan A. Blondet, under date of March 9, 1906, stating that he does not know what the rights are to which he refers; (*e*) a copy of the record in the proceedings to obtain possessory title to the "Adela" plantation, prosecuted by Victoriana Morales y Masquet in her own behalf and as the representative of the Estate of Ciprian Blondet, with a memorandum of its record in the registry of property. In addition the plaintiffs introduced the testimony of various witnesses, taken during the trial and tending to prove that the concession and irrigation works were not mortgaged with the "Adela" plantation; that Hipolito Gautier did not acquire the irrigation plant in bidding in the "Adela" plantation; that he had expressly conveyed the same to Fantauzzi; that the lands on which the head gates are situated do not belong to the "Adela" plantation; that Mrs. Rosa Teresa Blondet Alvarez did not give her consent to the execution of the deed of January 9, 1883, and other matters unnecessary to mention.'

"XI. The defendants allege: (*a*) That the irrigation concession must be regarded as a part of the 'Adela' plantation,

and as such must be understood to have been mortgaged and therefore attached, sold and conveyed together with the realty; (*b*) that the real deed of conveyance of the ownership of the tract of 110 *cuerdas* of land and the irrigation plant in favor of Fantauzzi was the decree of award made by the Guayama court in the foreclosure proceedings which was consented to by all the interested parties, and not the ratification made by the Estate of Ciprian Blondet in the deed of January 9, 1883; (*c*) that the defendants have possessed since the year 1883, enjoyed in good faith without interruption, and with a proper title, the irrigation plant and the lands now sought to be recovered; (*d*) that no allegation whatever has been made as to any defect or nullity in the title of ownership to the 'Adela' plantation, or the use and enjoyment of the irrigation plant, nor in regard to the foreclosure proceedings. Under these allegations they pray the court to dismiss the complaint with the costs against the plaintiffs.

"The defendants introduced as documentary evidence: (*a*) A certified copy of the said deed of January 9, 1883, with a memorandum of its record in the registry of property; (*b*) a certified copy of the irrigation concession granted to Blondet & Alvarez; (*c*) a certified copy of the deed of cancellation of the mortgage executed in the year 1884 under No. 131 of the Notarial Protocol of Arroyo; (*d*) certificate of the Registry of Property of Guayama in reference to the incumbrances and a description of the 'Adela' plantation; and (*e*) another certificate of the Registry of Property of Guayama in reference to a decision denying the admission of the irrigation concession to record.

"XII. The oral trial having been had on the date previously set and all of the evidence offered by the parties having been taken, counsel made their arguments, and expounding such legal propositions as they deemed pertinent, and thereafter counsel for the plaintiffs filed a lengthy and well-considered brief which the court has carefully examined."

## OPINION.

A careful examination of all of the evidence introduced by the parties to the appeal in this case shows that the plaintiffs base their right to the recovery of the irrigation plant on a concession for the taking of the waters granted on the 15th of September, 1873 by the Government of Porto Rico in favor of the firm of Blondet & Alvarez, and we must note the error into which the plaintiffs have fallen in supposing that the concession was granted individually to each of the partners, Guillermo Alvarez and Ciprian Blondet, when the certificate of this title introduced in evidence says literally that the "firm of Blondet & Alvarez are authorized to take, etc., etc." If we accept as true the fact admitted by both parties that, upon the dissolution of the firm of Blondet & Alvarez by deed of June 8, 1874, the "Adela" plantation was awarded to the partner Ciprian Blondet with the lands, buildings and appertenances, he remaining as the sole liquidator of the dissolved firm, and it has not been shown that the partner Alvarez reserved any right whatever to the irrigation concession and its works hereinbefore referred to, we must conclude that the plaintiff Guillermo Alvarez is now without title upon which to base his action.

But, aside from that documentary evidence, if it were possible to disregard it and accept the contention of the plaintiff that the irrigation concession was granted and belonged privately and individually to each of the partners, it clearly appears from the deed of January 9, 1883, that the said Guillermo Alvarez expressly ratified the sale made on June 8, 1874, in favor of Blondet of the "Adela" plantation and all his rights and actions to each and every one of the properties appertaining, and, therefore, it is logical to suppose that, if Alvarez had considered himself the sole and exclusive owner of a share in the irrigation plant, he would have made express reservation thereof or would have made some statement in regard thereto in the deed of January 9, 1883, wherein

the ratification of the transfer of the irrigation of water concession in favor of Hipolito Gautier, and by him to Fantauzzi, was expressly and definitely mentioned.

The Estate of Ciprian Blondet also bases its right to recover the irrigation plant on the same administrative title granted in favor of a partnership of which its predecessor was a partner and liquidator; but whether it be considered that the concession aforesaid was granted to the firm of Blondet & Alvarez or that it was granted individually to each of the partners, or whether it is considered that Ciprian Blondet did or did not acquire the interest of Alvarez, it will be observed that these plaintiffs, who style themselves the Estate of Ciprian Blondet, have not presented any evidence whatever, or any title to show that they are the heirs and successors of their predecessor Blondet and of his widow, Victoriana Morales, who does not now appear to be one of the plaintiffs; nor do they show that they have been awarded as such heirs or successors the ownership and title of the water concession for irrigation purposes.

If the action for the recovery of property is based (as it appears to be) upon the hypothesis that the predecessor's title to the irrigation concession was not legally transferred or conveyed to the defendant possessors, it should have been proved that the said right was transferred to the plaintiffs as the heirs of the original *concessionnaire*, and moreover that the irrigation concession with a fixed valuation was expressly and definitely awarded in payment of their credit to all or to some of the heirs upon the liquidation or division of the property left at his death. Then, and with such evidence, the plaintiffs could support their claim to title which, whether valid or not, would have constituted the indispensable ground upon which to base an action for recovery.

But the documentary evidence shows on the contrary that the irrigation concession and the works appertaining thereto is mentioned in the record of the transfer of the part of the "Adela" plantation entered in the registry of property in

favor of the defendants, and no evidence whatever· has been introduced tending to show the nullity or invalidity of the title of acquisition, or the record entered, nor has a declaration of the nullity thereof been prayed for either expressly or otherwise. So long as the nullity of these instruments and records is not declared the record in favor of the defendants must stand as an obstacle to the prosecution of this action for recovery against them because it is neither logical nor legally possible that two conflicting or contradictory titles to the same thing should subsist simultaneously.

It is not necessary to consider the question whether or not the water concession for irrigation purposes is a real, special and independent right, or whether it is merely an accessory or improvement of the property, because no matter what the opinion may be in this case, we must reach the conclusion that the defendants do not possess the fundamental title necessary to prosecute the action herein brought.

Therefore, whether the water concession be considered an independent property right or appertinent to the real property, in order to bring an action for recovery, it is necessary that the plaintiffs should satisfactorily prove that they are the present and lawful owners of the concession, and the administrative title or concession granted in favor of the firm of which the father of the plaintiffs was a partner, is not sufficient to prove their right therein.

After a careful consideration of the claims of the plaintiffs in respect to the 110½ *cuerdas* of land, we find absolutely nothing in the evidence to prove either directly or indirectly that they are the legal owners of said land; and following the same line of thought in reference to the irrigation concession, it is seen that, in the first place, the plaintiff Guillermo Alvarez y Sánchez appears among those who ask for the return of the 110½ *cuerdas* of land segregated from the "Adela" plantation, and it also appears that he was one of the parties to the deed of January 9, 1883, in which it was expressly declared that he thereby ratified the waiver and

transfer of the "Adela" plantation, its lands, buildings, factories, etc., at a sale made to Ciprian Blondet under deed of June 8, 1877, upon dissolution of the firm of Blondet & Alvarez. This waiver and conveyance of the "Adela" plantation to Ciprian Blondet is a fact set up in the complaint in the eleventh allegation thereof, admitted by the answer and confirmed by the documentary evidence; it being thus shown that the plaintiff Guillermo Alvarez does not show and cannot show that he is now a coowner of the lands which he, together with the other plaintiffs, now claims, and in so far as he is concerned, it is unnecessary to mention the writ of execution, the award to Gautier, the conveyance to Fantauzzi or the ratification of the Estate of Blondet, because all those acts were performed subsequently to the sale and waiver made by Guillermo Alvarez in favor of Ciprian Blondet.

Considering this point in respect to the other plaintiffs who style themselves the Estate of Ciprian Blondet, it is deduced from the evidence that Rosa Teresa Blondet y Morales was born in the year 1857 and therefore she was 26 years old in the year 1883 when the deed of ratification of January 9 was executed, and it has also been shown that she did not appear personally at the execution of that deed and that she was represented by her mother, Victoriana Morales, as her tutrix, but even admitting that these facts are absolutely true, it appears that the so-called Estate of Ciprian Blondet was the owner of the 110½ *cuerdas* now sought to be recovered.

It seems that the plaintiffs have sought to show by that evidence the invalidity or nullity of the deed of ratification, executed by the Estate of Blondet or January 9, 1883, but even disregarding the fact that the nullity thereof has neither been alleged therein nor proved, and that it has not been judicially so declared, and even supposing that it were not valid or legal in any respect, it must not be forgotten that the title by virtue of which the execution creditor Hipolito Gautier acquired the property was the writ of award, issued by a competent court on September 13, 1880, in a proper legal pro-

ceeding, in accordance with the provisions of the Law of Civil Procedure then in force, and that award transferred the property rights in the property sold at public auction to the execution creditor Gautier, with or without the consent of the execution debtor estate which is now the plaintiff. The plaintiffs have in nowise attacked either that writ of award or the record thereof made in the registry of property in favor of the execution debtor Gautier; nor have they assailed the deed of conveyance executed on January 9, 1883, by Hipolito Gautier in favor of Fantauzzi Hermanos, now the defendants, of the said 110½ *cuerdas* of land, nor the record thereof entered as a consequence of that sale. These plaintiffs, therefore, have not introduced in evidence any title whatever to show their ownership of the lands, the recovery of which they seek, but on the contrary they acknowledge the title presented by the defendants and recorded in their favor, without proving or asking for the nullity thereof, so that in order for the action for recovery to be successful, it is indispensably necessary that plaintiff shall fully prove his ownership of the thing sought to be recovered and to him is applicable the axiom: *"Actore non probante, reus est absolvendi."* (See among others, the judgment of the Supreme Court of Porto Rico in the case of *Ledesma v. Gonzáles,* Oct. 24, 1900, 1. P. R. Rep., 420; the case of *Bianchi* v. *The Ayuntamiento of Añasco,* Mar. 10, 1902, 2 P. R. Rep., 484, and the judgments of the Supreme Court of Spain, of Jan. 14, 1867; Nov. 28, 1870; Jan. 6, 1871; April 10 and July 3, 1872.)

The plaintiffs in this case have sought by their evidence to raise objections to and note defects in the title by virtue of which the defendants hold the property, and even if such objections were sustained and the defects considered to exist, the rights of the plaintiff would not thereby be established, nor could they base their action upon such defects where the defendants have shown possession under title of the property claimed, because a plaintiff must recover upon the strength of his own title and not upon the weakness of that of the de-

fendant.    This doctrine has been announced and sustained
by the Supreme Court of Porto Rico in the case of *Bianchi v.
the Ayuntamiento of Añasco,* Mar. 10, 1902, 2 P. R. Rep.,
484, and it is a well established jurisprudence of the Ameri-
can courts, which has been announced as follows:

"The real plaintiff must recover on the strength of his own title
and cannot rely on the weakness of the defendant's." (7 Bouvier's
Dictionary; see also Estee's Pleadings, vol. 2, p. 2220.)

It is also a well established doctrine that an action for the
recovery of property cannot succeed against a possessor un-
der color of title, except by the prosecution of the proper
action to destroy the validity of such title, and that the
possessor must be protected in such possession and cannot be
deprived thereof without having first been heard and defeated
in an action at law wherein such title or contract under which
he holds possession shall have been declared null and void.
(Judgment of the Supreme Court of Spain of Dec. 19, 1864,
and April 19, 1905.)

There are some cases in which the courts have held that
it is unnecessary first to obtain the annullment of the title of
the defendant possessor, but these decisions are exceptions to
the general rule and the case at bar is one of those wherein it
is necessary to obtain the annullment of the title, because
defendant's title herein originates in the same one in which
the plaintiffs base their action.    (Judgment of the Supreme
Court of Spain, June 27, 1867.)

Therefore, in view of all the evidence and the reasons set
forth in this opinion, which shall be made a part of the record
herein, as the plaintiffs have not proved their ownership of
the property which they seek to recover, and as the defend-
ants possess the same by virtue of titles which have not been
annulled, the complaint herein is hereby dismissed in all its
parts with the costs against the plaintiffs.—Guayama, Porto
Rico, April 13, 1907, Luis Muñoz Morales, Judge of the Dis-
trict Court.

From this opinion and judgment the plaintiffs took an appeal under date of April 19, 1907.

We think it is a better practice when, as in the present case, an opinion is filed, that a separate judgment be rendered in accordance therewith, and it is the judgment which must be entered according to the provisions of section 227 of the Code of Civil Procedure, and from which the appeal must be taken.

It may be that this has been done but if so, the appellant has not taken the pains to cause a copy of the separate judgment to come up in the record and it is the duty of the appellant to present on appeal for the decision thereof everything constituting the judgment roll, according to the provisions of section 299 and subdivision two of section 233 of the said code. We advise the better practice, but we accept as a judgment from which the appeal herein is taken, the opinion and judgment hereinbefore quoted at length, because it has so come up in the record and appellant refers thereto.

A statement of facts has been filed which, according to counsel for the appellant, was submitted for approval in order that upon its approval it should be incorporated in the transcript of the record. This document begins on page 108 and ends on page 144.

The respondent may have made amendments to that statement of facts which may or may not have been accepted, and the judge himself may have modified it to conform to the evidence taken, but, as presented, it does not appear to have been the final result of the concurrence of all of the parties to the litigation, and the judge who presided at the trial.

And, in addition to these doubts, it appears that the said statement of facts which is contained in the record is not approved or signed by the trial judge. Without such signature and approval, we cannot consider the evidence and determine whether the findings thereon are correct.

We have, heretofore, held that:

"The statement of facts which must be filed in the Supreme Court on appeal must be approved by the judge, taking into consideration the amendments made and accepted by the parties."

See the case of *Rodríguez de las Albas* v. *Jiménez,* 3 Dec. de P. R., 282.

"The bill of exceptions as well as the statement of facts filed in the Supreme Court on appeal must be signed by the trial judge, and a certificate of the secretary of the court to the effect that, in the minutes of the court there appears an order of the judge approving the statement of facts, is not sufficient to comply with the requirements necessary in order that it may appear that in the document filed the facts are stated as they occurred during the trial."

See the case of *García* v. *Cañada,* 3 Dec. de P. R., 525.

In the case at bar not even a certificate of the secretary of the court appears such as we refused to accept as a substitute for the signature of the judge to the statement of facts filed in that case.

Under such circumstances we must accept the principal conclusion of the judgment appealed from, which is that the plaintiffs, now the appellants, have not proved their ownership of the properties sought to be recovered and that the defendants possess the same by virtue of titles which have not been annulled.

And we must also admit that the defendants hold and enjoy civil possession of said properties because good faith is always presumed in the absence of evidence to the contrary, and in this case we cannot enter upon an examination of the evidence because as we have already said, the statement of facts has not been properly authenticated.

We do not deny that it is admitted by the plaintiff that the persons composing the Estate of Blondet are the heirs of Ciprian Blondet, but said estate claims the ownership of an irrigation concession and a tract of land, and from the moment that this fact is contradicted by some one showing title

in his favor to the said properties, duly recorded in the registry of property, the plaintiff estate should have proved that contraverted fact, which it did not succeed in doing, according to the judgment appealed from, and we cannot hold to the contrary. So that the title of an heir is not sufficient in itself for recovery in this case, according to the judgment of the Supreme Court of Spain, of January 17, 1872.

A universal title such as a title of inheritance is ineffectual and insufficient in itself upon which to recover property in the absence of evidence that such property forms a part of the inheritance, because the heir cannot acquire other property or rights than those left by his predecessor upon his death. (Judgment of Supreme Court of Spain, April 20, 1874.)

It is now well to recall that these same plaintiffs took an appeal from the decision of the Registrar of Property of Guayama, refusing to record in their favor separately and independently of the property recorded in favor of Fantauzzi Hermanos, the water concessions of the Real River, and this Supreme Court, by its judgment of February 28, 1907, in accordance with the opinion of Mr. Chief Justice Quiñones, affirmed the decision of the registrar of property on the ground that concessions for the use of waters cannot be recorded alone, but only in connection with the property for the benefit of which, and as an inherent right in which, the same have been granted.

It appears to be a fact admitted by the appellant that the title of defendant has its origin in the same title upon which plaintiffs base their contention.

But on reading the complaint and especially the allegations numbered 24 and 25, it appears that the action for recovery herein prosecuted is based on the supposition that the title of Ciprian Blondet, the predecessor in interest of the plaintiffs, was not legally conveyed to the defendant possessors.

So that the real contention is that the conveyance of the irrigation plant and the tract of land to the defendants is null and void. Nullity then is produced by an action and it appears therefore that the right to recovery is not independent of the right of annullment so that it was necessary first to seek the annullment of the title of the defendants, as it is only by this means that the title of plaintiffs could be strengthened, because otherwise both titles cannot subsist and be harmonized. (Judgments of the Supreme Court of Spain of June 27, 1867; October 16, 1873, and May 22, 1889.)

Neither in the prayer of the complaint nor in any part thereof is the annullment of defendant's title demanded nor the annullment of the record thereof in the registry of property.

There remains to be considered, therefore, the fundamental errors which counsel, at the end of his brief, alleges to have been committed by the trial judge, and which are alleged to be errors of law and not errors of fact proved at the trial. We can neither affirm or deny that such errors exist because we have no authentic document before us upon which to base such action.

But, if the opinion and judgment contains absolutely all the facts proved at the trial, which we do not know to be so, we could not even then reverse it because in that case we would hold that it was according to law.

In view of the reasons set forth the judgment appealed from must be affirmed with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, MacLeary and Wolf concurred.